No. 27,499.

F. J. FOETISCH and C. R. CRAIG, *Appellees,* v. MARY E. WHITE, R. E. ANDERSON and THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY, *Appellees;* PAUL KLEIN, *Appellant.*

(257 Pac. 941.)

SYLLABUS BY THE COURT.

FRAUDS, STATUTE OF—*Promise to Answer for Debt of Another—Agreement by Purchaser to Pay Mortgage Debt on Land.* In a purchase of land wherein a part of the purchase price agreed to be paid was represented by a note and mortgage upon the land, executed by the grantor to a third party, who in turn transferred it back to the grantor, who negotiated the same in order to realize the balance of the purchase price, and this formula was adopted and carried out under the direction of the grantee and for his benefit, and the deed executed by the grantor contained a stipulation that the grantee assumed and agreed to pay the mortgage debt and thereafter took possession of the land, received the rents and profits thereof and regularly paid the interest on the note and mortgage to the holders for a period of years, the contract of assumption is to be regarded as an original and absolute promise to pay the debt upon which he is personally liable, and such contract is not a promise to answer for the debt of another within the statute of frauds.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed July 9, 1927. Affirmed.

*G. R. Gard,* of Iola, for the appellant; *Travis Morse,* of Iola, of counsel.

*James W. Finley, James A. Allen, B. M. Dunham* and *T. R. Evans,* all of Chanute, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:   F. J. Foetisch and C. R. Craig brought this action to recover upon a promissory note for $4,800, and to foreclose a mortgage on a farm in Neosho county given to secure payment of the note. They named as defendants Mary E. White, R. E. Anderson, Paul Klein and the Phœnix Mutual Life Insurance Company, but there was no controversy among the parties as to the rights of the insurance company, and a judgment in its favor was rendered by consent.

Upon the evidence adduced judgment was given plaintiffs for the amount of the note and interest against Mary E. White, R. E. Anderson and Paul Klein, and a foreclosure of the mortgage was

Frauds, Statute of, 27 C. J. p. 163 n. 74; 25 R. C. L. 481.   Mortgages, 41 C. J. pp. 724 n. 78, 725 n. 89, 726 n. 5, 9; 19 R. C. L. 380.

decreed. Mary E. White and R. E. Anderson were given judgment against Klein as prayed for in a cross petition and subrogated to the rights of the plaintiffs and of the insurance company as to the judgments rendered in their favor. Paul Klein appeals.

The contested questions arise out of the following transactions: Mary E. White and her husband owned a farm of about 150 acres in Neosho county, and on July 8, 1920, they entered into a written contract to sell and convey it to Klein for $15,000, subject to a mortgage indebtedness of $7,500, and the farm was taken by Klein subject to the liens as part of the purchase money. In part payment of the farm, Klein conveyed to the Whites city property in Iola of the agreed value of $6,500. He then paid $1,000 in cash, and the balance of the purchase price was paid by a note for $4,800 with a mortgage on the land conveyed to Klein. These, together with the mortgage lien in favor of the Phœnix Mutual Life Insurance Company upon the land of $2,700 which Klein assumed to pay, made up the $15,000 purchase price of the land. In respect to the $4,800 note and mortgage involved in this action, the following plan was invented by Klein, which was that the Whites should execute a note and a mortgage on the land to their son-in-law, Anderson, and Anderson in turn was to assign and transfer them back to the Whites. This was done at the instance and under the direction of Klein, who stated that he wished this method of paying the purchase price to be adopted; that he did not want the obligation to stand on the records against him, as it would affect his credit. It was agreed, however, that the note and mortgage so executed should stand as the act and obligation of Klein. In furtherance of this agreement and direction the note and mortgage were executed to Anderson, and on the same day and without consideration Anderson in turn assigned and transferred them back to the Whites who sold and transferred them to another. They have been duly indorsed and transferred through the hands of several persons until they came into the possession of plaintiffs, who are now the owners and holders thereof. Abstracts and deeds were made and placed in escrow in the Iola State Bank, where they were to be held until final settlement was made between the parties. The Whites executed and delivered the mortgage for $4,800 as stated, and on August 4, 1920, they executed and delivered a deed to Klein in which it was recited that the farm was conveyed free and clear of encumbrances, except the first mortgage of $2,700 and a second mortgage for $4,800,

amounting to $7,500, which Klein "assumes and agrees to pay with interest thereon." Thereafter Klein entered into possession of the land and has held it since November, 1920.

The trial court found that Klein purchased the land and agreed to pay for it the sum of $15,000; that he was to pay this sum by conveying the Iola property as a payment of $6,500, and agreed to and did pay $1,000 in cash, and that he was to and agreed to pay the balance of the purchase price, $7,500, by assuming and agreeing to pay the two mortgages described in the deed, note and mortgage, being the one involved in the action. It was found that the note and mortgage of $4,800 was given by the defendant Mary E. White and her husband, since deceased, to R. E. Anderson, at the instance and on the request of Paul Klein, and that it represented that much of the purchase price of the land; that the only way the Whites could or did realize the payment of the $4,800 of the purchase price of the farm which Klein was to pay was through the execution and sale of the note and mortgage mentioned; that the note and mortgage were executed in the manner in which it was done under the direction of Klein, and that he had at all times recognized it as his personal obligation and made payments of the interest thereon to the present holders of the obligations. It was further found that there was no fraud or deceit practiced on Klein on the execution of the deeds or incorporating therein the provisions as to the assumption and payment of the notes specified. The court declared that the note and mortgage, executed and delivered as it was, was the act and obligation of Klein, was primarily his indebtedness and liability and was done for his use and benefit. Among other things the court found that the contract of sale, deed, note and mortgage were part of and are to be considered as a single transaction, and hence the obligation was primarily the debt of Klein, and accordingly judgment was rendered as has been stated.

The first and principal contention of Klein is that he had not signed the note and mortgage and therefore could not be held to have assumed the payment of the $4,800 mortgage debt. Apart from the express assumption in the deed, the evidence showed beyond peradventure that the $4,800 obligation was a part of the purchase price of the land which Klein agreed to pay and which he undertook to pay in the manner stated. The purchase price was his liability, and the circumstances of the transaction satisfactorily show that the amount represented by the note and mortgage was

his debt, and that he was the primary debtor. By the contract of sale he purchased the farm for $15,000, to be paid for by other property of the value of $6,500, $1,000 in cash, and the $7,500 balance was made up of the mortgage indebtedness, and in the contract it was recited that this indebtedness was "part of the purchase price." In his testimony Klein with commendable candor admitted many of the essential facts. He testified that the purchase price was $15,000, and that the mortgage debt of $4,800 was part of the purchase price. He stated that he knew the $7,500 of mortgage indebtedness mentioned in the sale contract was made up of the mortgage of the insurance company for $2,700 and the $4,800 mortgage, and stated that he was not objecting that the $7,500 mortgage indebtedness was written up in two mortgages of $2,700 and $4,800, and further that he understood all of the time that the sum of these two mortgages was part of the purchase price. He testified that the mortgage debt on the farm when the sale contract was made was only $2,700, and that he knew that it would take the $4,800 to make up the $7,500 mortgage debt, and that it made no difference to him to whom the $4,800 mortgage was given. He admitted that the deed which contained the assumption of the mortgage debt was turned over to him about December, 1920; that he then took possession of the land, rented it and has since appropriated the rents and profits derived from it. He acknowledged that he had made four interest payments on the $4,800 note, and never made any objection to the note. Although the mortgage debt was in the name of another, the facts admitted and proven constituted an assumption of the obligation for the balance of the purchase money. It was the payment of his own debt which he assumed, and the agreement cannot be regarded as within the statute of frauds. (*Manufacturing Co. v. Burrows*, 40 Kan. 361, 19 Pac. 809; *Neiswanger v. McClellan*, 45 Kan. 599, 26 Pac. 18; *Smith v. Kibbe*, 104 Kan. 159, 178 Pac. 427; *Woodburn v. Harvey*, 107 Kan. 57, 190 Pac. 620.) It has been said that—

"By the great weight of authority an assumption of the mortgage debt by the purchaser is implied where it is expressly agreed that the payment of the mortgage shall constitute a part of the purchase money, or in the absence of such agreement, where the amount of the mortgage debt has been deducted or retained by the purchaser out of the agreed price." (41 C. J. 724.)

A case quite in point is *Heid v. Vreeland*, 30 N. J. Eq. 591, where it was said:

"There can be no doubt at this day that, where the purchaser of land encumbered by a mortgage, agrees to pay a particular sum as purchase money, and, on the execution of the contract of purchase, the amount of the mortgage is deducted from the consideration, and the land conveyed subject to the mortgage, the purchaser is bound to pay the mortgage debt, whether he agreed to do so by express words or not. This obligation results necessarily from the very nature of the transaction. Having accepted the land subject to the mortgage, and kept back enough of the vendor's money to pay it, it is only common honesty that he should be required either to pay the mortgage or stand primarily liable for it. His retention of the vendor's money for the payment of the mortgage, imposes upon him the duty of protecting the vendor against the mortgage debt. This must be so even according to the lowest notions of justice, for it would seem to be almost intolerably unjust to permit him to keep back the vendor's money with the understanding that he would pay the vendor's debt and still be free from all liability for a failure to apply the money according to his promise." (p. 593.)

The fact that the Whites and Anderson made themselves liable by the signing and transfer of the note and mortgage, does not relieve Klein, the primary debtor for the purchase money, from liability. Apart from these considerations there was the express assumption of the obligation in the deed which Klein has retained for more than five years, and under which he went into possession of the land and appropriated the rents and profits of it. That made him personally liable to the same extent as if he had signed the note and mortgage. (*Schmucker v. Sibert*, 18 Kan. 104; *Neiswanger v. McClellan*, supra; *Hendricks v. Brooks*, 80 Kan. 1, 101 Pac. 622.) While he said that he did not know of the assumption clause in the deed, he could not shut his eyes to its terms through a period of years. When he accepted the deed he is deemed to have accepted it with its obligations. (*Hendricks v. Brooks*, supra.) His acts in taking and holding the deed without repudiation or without seeking a rescission of it, and in exercising acts of ownership over it for so long a period, is a ratification of the assumption, even if he had no knowledge of the stipulation at the time he accepted it.

It being determined that his assumption of the debt is an original and absolute promise to pay, it must be held that he is personally liable therefor, and hence it is not necessary to consider the questions discussed as to accommodation paper. No merit is found in the claim that the action was prematurely brought.

The judgment is affirmed.