No. 29,165.

The Proctor Trust Company, *Appellee*, v. C. T. Neihart et al.,
*Appellants;* V. A. Young, The Railroad Building, Loan and
Savings Association and The New England Securities Com-
pany et al., *Appellees.*

(288 Pac. 574.)

Opinion filed
June 7, 1930.

*A. K. Stavely,* of Lyndon, *C. G. Messerley,* of Osage City, and *William
Wallace,* of Topeka, for the appellants.

*Earl Bohannon,* of Oswego, for appellee The Proctor Trust Company; *Fred
S. Jackson, P. H. Forbes* and *James E. Smith,* all of Topeka, for appellees
·Logan and Young.

The opinion of the court was delivered by

Hutchison, J.:   This is a foreclosure action, and the appeal is

from a personal judgment rendered against a purchaser of the property after the mortgage had been given, as having assumed and agreed to pay the same. The judgment was also rendered against the makers of the note and mortgage, but no appeal has been taken by them.

The answer of the appellant set up two written agreements for the exchange of property, the latter being the same as the earlier except to correct two mistakes in figures in the earlier one, and plead the agreement as shown in the contracts to take the property subject to the mortgage; that one of the deeds contained a clause to assume and pay the mortgage and was placed on record by the agent without his having seen it and without his knowledge or consent as to such clause, and the other deed had no such clause in it when delivered to him; that there was no delivery to him or acceptance by him of deeds containing such assumption clause.

The written contract was between appellant and one A. W. Logan, to exchange appellant's business property in town to Logan for several tracts of land standing on record in the name of Logan and several other parties whose names were not mentioned in the contract. The agreement stated that the town property was subject to a mortgage of $3,500, and the farm property subject to a mortgage of $16,000. This contract was made February 24, 1926. No prices were placed in the contract on either property, but one was to be exchanged for the other, only $3,500 in cash was to go with the business building to Logan for the land. The contract provided that the deeds be held in escrow until each party fulfills his part of the contract, and contained the following sentence:

"It is further agreed between the parties to these presents that possession of said premises be transferred when this article is signed."

The agent that effected the exchange was a brother of Logan, but the court found he was not the agent of Logan or of any of the other parties owning the land with him, but was the agent of the appellant Neihart. The deeds were prepared by the agent, one Thayer and Neihart, and were taken by the agent to Logan and his people. They were made, like the contract, subject to the mortgage. One of the owners of the Logan farm changed the deeds conveying the farm land to the appellant by adding the following words after the statement of the land being subject to the $16,000 mortgage: "which is hereby assumed by party of second part." After this amendment these deeds were executed and ac-

knowledged, conveying the land in this manner to Neihart, the appellant. Instead of putting the deeds in escrow, the agent brought one of these deeds to Neihart, the one signed by Logan and another party, with the suggestion that because of threatened litigation against the other party signing this deed, it would be well to place it on record at once. Neihart did not examine it, but answered, if it was drawn according to contract, he didn't see any harm in having it recorded. This conversation was in the field on the 15th of March. The deed was dated March 9, acknowledged by Logan March 12, by other party March 15, and recorded on same day by the agent shortly after his conversation with Neihart in the field. The other deed covering land included in this mortgage, known as the Eggert deed, was dated March 9, acknowledged March 12, and recorded June 28. It was left in escrow at the bank by the agent some time prior to June 21, and was not seen by any of the parties except the agent after its execution, until Neihart saw it in the bank June 21, when a new contract was made and signed at the request of Logan, substantially the same as the former, except changing the amount of encumbrance on the business property to $3,700, instead of $3,500, and increasing the cash from $3,500 to $3,700, no change being made as to the exchange of properties being subject to the mortgages on each side.

On March 29 Neihart examined the record in the register of deeds' office and found the Logan deed to him that was recorded March 15 contained the words "which is hereby assumed by party of second part," and called the agent and complained about it. The agent said that clause should not have been in the deed, and started to strike it out. Neihart asked if he had authority to strike it out. He replied that he had, and struck it out; then the register of deeds struck it out of the record as well. When Neihart first saw the Eggert deed at the bank on June 21 this clause had been stricken out.

There was evidence tending to show that the agent represented Neihart, that he represented his brother, A. W. Logan, and his associates and that he represented both parties at the same time, but, as stated above, the court found that he was the agent of Neihart and not the agent of any of the other parties involved. That finding is binding upon this court as well as all other findings of fact made by the trial court if there was, as there is in this question of agency, sufficient evidence to support such finding.

The following findings of fact made by the trial court are especially involved in this controversy:

"5. March 12, 1926, defendants, V. A. Young and Edna F. Young, executed their deed to the defendant, C. T. Neihart, for part of said land and thereafter on the 15th day of March, 1926, defendants, A. W. Logan and A. Maude Logan, executed the same deed to the said C. T. Neihart, and that by the terms and conditions of said deed at the time of its execution and delivery, the grantee therein assumed and agreed to pay the mortgage of this plaintiff. That thereafter, and on the 29th day of March, 1926, the defendant, C. T. Neihart, by and through his agent, Carl Logan, struck from said deed the words, 'which is hereby assumed by party of the second part'; and that the said change or alteration in said deed was made without the consent or knowledge of any of the grantors and after the same had been delivered and recorded.

"6. That Carl Logan was acting as the agent of and for the defendant, C. T. Neihart, in securing the execution of the deed and was not the agent of the defendants, V. A. Young and wife and A. W. Logan and wife, in connection with the exchange of the real estate.

"7. On March 12, 1926, defendants, Robert Eggert and Florence J. Eggert, his wife, executed a deed covering part of the above-described lands to the defendant, C. T. Neihart; that by the terms and conditions of the deed C. T. Neihart assumed and agreed to pay the mortgage indebtedness due the plaintiff. That when the said Robert Eggert parted with the deed for the purpose of delivery to C. T. Neihart, the deed contained the assumption clause, but that thereafter and at some time undisclosed by the evidence, the words, 'which is hereby assumed by party of the second part,' were stricken from the said deed, and that the said Robert Eggert did not authorize or consent to the changing of said deed. That when the said deed was presented to the defendant, C. T. Neihart, at the bank to be placed in escrow the said Neihart made no inquiry as to when or by whom said assumption clause was stricken from the deed, and that neither the said Robert Eggert, A. W. Logan or V. A. Young have ratified, consented or agreed to the changing of the said deeds in the manner hereinbefore set forth, and that said changes constitute material alterations therein.

"8. That C. T. Neihart has been in possession of said lands, collecting the rents and profits therefrom during the years 1926, 1927 and 1928.

"9. That defendant, C. T. Neihart, after knowing said deed was on record and of the changes that had been made by erasing and striking therefrom the words, 'which is hereby assumed by party of the second part,' did not notify either V. A. Young, A. W. Logan or Robert Eggert of the change that had been made in the deed."

The trial court concluded that the agent was the agent of Neihart for the exchange of the properties and for the recording of the deed; that the striking out of the assumption clause was a material alteration and did not bind the plaintiff mortgagee; that Neihart had waived his right to object to the clause in the deeds and was estopped

to deny his liability thereunder; that by the terms of the deeds Neihart had assumed and agreed to pay the note and mortgage and that these deeds were the final contracts between the parties.

The following clause in finding No. 5 and substantially the same in finding No. 7 is more nearly and strictly speaking a conclusion of law than a finding of fact, and will be so considered:

". . . that by the terms and conditions of said deed at the time of its execution and delivery, the grantee therein assumed and agreed to pay the mortgage of this plaintiff."

The appellant presents and ably argues some other points in addition to agency, which we will not be able to consider, because they are covered by the findings of fact.

The real questions here for consideration are: Do the findings and the evidence show that appellant assumed and agreed to pay the mortgage, and if he did, has he waived his right to object to such assumption?

It is not contended that he consented to the delivery and recording of the first deed, knowing that it contained the assumption clause, but that he made the agent his agent to decide, from an examination of the deed, if it conformed to the contract, and is bound thereby; that the deed was the final contract and superseded the earlier one, and that he entered into possession of the property by virtue of the deed, thus ratifying its terms. The last two propositions are usually applicable and sound, but by very unusual circumstances are not so here. The deed generally follows the contract, and the changes in it are therefore naturally and properly presumed to be intended by the parties as changes desired by both parties, but in this case, more than three months after the execution of the deeds and while one of them was still in escrow, Logan presented to appellant a contract to be signed correcting the mistakes that had been made in the former contract. It contained no mention of assuming the mortgage, but adhered to the original plan of taking the land subject to the mortgage, so there can under these circumstances be no presumption that the deeds contained the final agreement of the parties on this point.

Authorities are cited showing the conclusive force of accepting the adverse terms of a deed when the grantee enters into possession of the property by virtue thereof. The contract in this case provided for immediate possession upon the execution thereof, which

was nearly three weeks before the execution of the deeds. It cannot be said that the possession of the appellant was by virtue of the deeds. He was entitled to possession three weeks before the making of the deeds. If the appellant, by telling the agent that the deed might be recorded if it conformed to the contract, adopted and accepted the judgment of the agent as his own judgment and the agent overlooked the assumption clause, it would be the same in effect as if the appellant had examined the deed himself and overlooked that provision. The evidence shows it was regarded by the agent as an oversight on his part when two weeks later he said: "Why, that ought not be in that." So we may eliminate the question of agency, and consider the acts of the agent as the acts of the appellant, and consider the case as if he had failed to examine the deed before recording it or in examining it had overlooked the assumption clause, and in the same connection the fact that at the first opportunity thereafter made complaint and protest about it.

"Where the acceptance of a deed containing the assumption clause is in issue, the fact that it did not appear that such deed was ever delivered to the grantee or that he knew its contents, or, if delivery is shown, that the grantee, as soon as he discovered the clause, refused to accept the deed, is sufficient to defeat an action brought on the covenant. . . .

"It is essential that the deed in its recitals as to the mortgage should be definite and clear; that, in addition to the recitals, there should be some evidence that the grantee, or his duly authorized agent, knew or had some reason to suppose that the deed contained them and that he had assented thereto, such assent being presumed where delivery of the deed to the grantee and acceptance by him are shown, unless the grantee is acting as a mere conduit for the passing of title to some one else. Where the grantee's assent to the assumption clause is in issue, the mere recital in the deed that the grantee assumes and agrees to pay the mortgage debt, or the mere acceptance and recording of the deed by the purchaser, has been held not sufficient evidence of such assent. Whether the grantee knew of the assumption clause in the deed at the time it was executed or not is immaterial if it is shown that he knew of it afterward and ratified it beyond all question. A presumption of the grantee's assent to the assumption clause does not arise from the mere recording of the deed, although such constructive-notice would place upon him the duty of inquiry . . ." (41 C. J. 726.)

"Generally speaking, a mortgagee has no greater right than has the mortgagor against the purchaser of the mortgaged premises who agrees to pay the mortgage. So the assumption by the grantee, of a mortgage on the land conveyed to him, although incorporated in the deed of conveyance, does not render him absolutely liable thereon to the mortgagee where by a collateral agreement his liability is limited or abridged. . . . The circumstance that

there was no agreement for assumption between the grantor and grantee, and the agreement was inserted in an unusual place in the deed and escaped the notice of the latter, has been ruled to exonerate him from personal liability. So where the grantee, though he contracted only to take his conveyance subject to a mortgage, accepts without inspection a deed in which he is made to assume the mortgage, and does not discover this until judgment for deficiency has been entered against him in a foreclosure suit, he may have the judgment opened and may show by the contract that he was not liable for the deficiency." (19 R. C. L. 378.)

The main issue in the case was whether or not appellant assumed the mortgage or assented to. the assumption clause being in the conveyance to him. Assume means "to take upon one's self (to do or perform); to undertake." (Webster's Internat'l Dict.) One cannot undertake or assume something of which he has no knowledge or information, of course, aside from the rules of constructive or implied knowledge. It is not contended that appellant had actual knowledge of the assumption clause being in the deed prior to his observing it in the office of the register of deeds, two weeks after the deed had been recorded.

"To create a personal liability on the part of a grantee in a deed to pay a prior mortgage or lien on the premises conveyed, the covenant or words used therein must clearly import that the obligation was intended by the grantor, and knowingly .assumed by the grantee." (*Holcomb v. Thompson,* 50 Kan. 598, syl., 32 Pac. 1091. See, also, *Hendricks v. Brooks,* 80 Kan. 1, 101 Pac. 622; *Shattuck v. Rogers,* 54 Kan. 266, 38 Pac. 280.)

It is urged that where the amount of the mortgage indebtedness is deducted from the purchase price that there is an implied assumption, citing *Woodburn v. Harvey,* 107 Kan. 57, 190 Pac. 620; *Foetisch v. White,* 124 Kan. 136, 257 Pac. 941, and decisions from other states. Both Kansas cases were where the indebtedness was incurred at the instance and suggestion of the purchaser in order to facilitate the deal and, of course, the indebtedness thus incurred at his suggestion was a part of the purchase price and properly deducted therefrom, which would justly support the implication of assumption. There is no semblance of such facts in this case, and in fact the contract names no value for either property, but simply an exchange of property. There was no finding along this line, nor sufficient evidence to justify any such finding.

We conclude that the appellant did not knowingly or impliedly assume to pay the mortgage indebtedness by his words or acts or those of his agent.

But appellee insists that even if appellant was not in the first instance liable on such assumption, he has waived his right to object thereto by his acquiescence in the form of deeds furnished, and by his entering into and continuing in possession of the property conveyed, and collecting the rents and profits therefrom. We have heretofore mentioned the fact that the right to enter into possession was given by the contract made some weeks before the deeds. The fact that one continues in possession after rightly acquiring the same under an agreement, which is not questioned, does not raise any presumption against him or his right to so continue, even if subsequent events may raise a question as to his right to so continue. The findings show that appellant did not acquiesce in the form of deed furnished and recorded. On the contrary, he showed his dissatisfaction with the form to the extent of demanding that it be changed, and it was changed. There can be no approval of the act of the agent in striking out the objectionable clause, nor of the appellant consenting to his doing so, especially under the finding that he was the agent of the appellant, but however wrong and improper the striking out of the clause may have been, it conclusively shows just the opposite of acquiescence, and does not constitute a waiver of appellant's right to object to the clause inserted in the deed without his consent. A waiver is an intentional renunciation of a claim or right and exists only where there has been some absolute action or inaction inconsistent with that claim or right.

"A waiver of a contract right implies a voluntary and intentional renunciation of it, and some positive act or positive inaction inconsistent with the contract right is necessary to create a waiver." (*Street Lighting Co. v. City of Wichita,* 101 Kan. 452, syl. ¶ 1, 168 Pac. 1090. See, also, *Long v. Clark,* 90 Kan. 535, 135 Pac. 673; *Harpham Brothers Co. v. Perry,* 118 Kan. 457, 235 Pac. 1039; 27 R. C. L. 908.)

Attention is directed to the failure of appellant to inform Logan and his associates of the striking out of the clause. This does not make his conduct inconsistent. He should have informed Logan, the same as Logan should have informed him that they were inserting the assumption clause contrary to the terms of the written agreement. They are both at fault in the matter of informing each other in these particulars. However questionable the process of striking out this clause, may appellant under this criticism of method pursued be entitled to some amelioration of censure because of having entertained the thought, which was erroneous under the findings,

that the agent striking out the clause was, in doing so, acting for Logan and his associates?

Appellee contends in support of the judgment that the alteration in the deed was a material one and is not binding upon the appellee, and appellee is entitled to have the clause that was stricken out restored and enforced, which would be a reformation of the deed to restore it to what it was or ought to have been. Of course, the alteration was a material one and improperly made, but we have already held that under the findings and record the assumption clause was not binding upon the appellant and he had not waived his right to object to such clause being in the deed, which makes a case entitling appellant under his pleadings to a reformation of the deed, just the same in kind but opposite in effect to restoring and enforcing the assumption clause. Both are in the nature of reformation. The fact that appellant did not insist upon that part of his prayer does not change or increase his liability.

In the case of *Hurt v. Stout,* 105 Kan. 54, 181 Pac. 623, the court held that a material alteration made in a deed by the procurement of the plaintiff would prevent his recovery. But will a material alteration by procurement or otherwise create a liability when none otherwise exists? We think not.

The situation, as the findings show, is slightly different with reference to the Eggert deed. It is not disclosed when or by whom the assumption clause was stricken out, but it was done without the knowledge or consent of the grantor. It was stricken out when the appellant first saw it. If the striking out in this deed was like that in the other, improperly done, the appellant would not be liable for the mortgage debt, because he had not assumed the debt nor waived his right to object to such clause, and a court of equity should not enforce a provision contrary to the written agreement and intention of the contracting parties.

"A court of equity has power to correct a mistake in a written instrument so as to make it express the intention and agreement of the parties, and when the fact of a mistake appears and the rights of no third party intervene, it is the duty of the court to make the correction; and this duty is coextensive with the mistake, and extends, not merely to the reformation of the original instrument, but also to all subsequent proceedings, papers, judgments, and decrees into which the mistake, as a mistake, is carried." (*National Bank v. Wentworth,* 28 Kan. 183, syl. ¶ 1.)

"Where the grantee of a deed enters into an agreement with the grantor

that he will assume and pay all of the mortgages and encumbrances on the land conveyed at the time of the execution of the deed, but by the mutual mistake of the parties the deed in its written form does not express this contract, equity has jurisdiction to reform the written instrument so as to conform to the intention, agreement and understanding of the parties." (*Stephenson v. Elliott,* 53 Kan. 550, syl. ¶ 1, 36 Pac. 980. See, also, *Butler v. Milner,* 95 Kan. 463, 148 Pac. 605; *Zuspann v. Roy,* 102 Kan. 188, 170 Pac. 387, 6 R. C. L. 626.)

The judgment is reversed and cause remanded with instructions to set aside the personal judgment rendered against appellant C. T. Neihart, and the judgment otherwise is not disturbed.